UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER L. JACKSON,
      Plaintiff,

v.                                             Case No. 20-C-1148

CHAD VARTANIAN and
RICHARD BILSON,
      Defendants.

## ORDER

Christopher L. Jackson claims that the defendants Milwaukee Police Detective Chad Vartanian and FBI Special Agent Richard Bilson violated and conspired to violate his Fourth Amendment rights by knowingly providing false information that was material to a warrant's no-knock authorization. Vartanian and Bilson have moved for judgement on the pleadings under Federal Rule of Civil Procedure 12(c). The motions are fully briefed and ready for this decision.

I.    BACKGROUND

    A.  The No-Knock Warrant

On November 4, 2015, Detective Eric Levenhagen of the Brookfield Police Department sought a no-knock warrant to search Jackson's residence. ECF No. 43-1 at 2. According to the warrant affidavit, Jackson was suspected of attempted homicide. *Id.* at 7. Levenhagen averred that on October 28, 2015, Brookfield officers responded to an EMS call for a gunshot wound and found a man, woman, and child in a vehicle. *Id.*, at 5. The man had gunshot wounds in his chin and legs. *Id.* He claimed that he had been shot by someone trailing them in an SUV. *Id.* Later, the man told officers that he had met an

1

individual known as "C" in the parking lot of a Target store. *Id.* at 6. He described "C" as a black male with light skin in his twenties, who resided near 40th Street and North Avenue in Milwaukee. *Id.* Officers eventually searched the man's and woman's phones and found a phone number associated with a contact named "C." *Id.* They found text messages between the man and "C" that referenced buying and selling hydrocodone and meeting at Target. *Id.* at 6. The man's phone also logged three calls with "C" on October 28, 2015. *Id.* Levenhagen further averred that Detective Tank of the Brookfield Police Department provided "C"'s phone number to an unnamed Milwaukee police detective, who stated that, according to Milwaukee Police Department records, the phone number belonged to Jackson. *Id.* at 7. Jackson's probation officer had that phone number for Jackson as well. *Id.* Levenhagen further averred that the man who was shot identified Jackson in a photo array as "C," the individual he met at Target. *Id.*

In paragraph 16 of the warrant affidavit, Levenhagen averred the following in support of no-knock authorization:

> Jackson is a suspect in the Attempted Homicide of three individuals where a firearm was used. Jackson is a convicted felon and his prior criminal record is as follows:
>
> Brown County Case Number 2002CF000171: Jackson was charged with §961.41(1m)(cm)1 Possess w/Intent-Cocaine (<=5g) and ultimately convicted on 05/16/2002 on §961.41(3g)(c) Possession of Cocaine/Cocaine Base and §943.34(1)(a) Receiving Stolen Property (<= $2500).
>
> Milwaukee County Case Number 2002CF001893: Jackson was convicted on 10/21/2002 of §961.41(3g)(e) Possession of THC and §946.49(1)(b) Bail Jumping-Felony.
>
> Milwaukee County Case Number 2002CF003260: Jackson was convicted on 10/21/2002 of §961.41(1m)(cm)1 Possess w/Intent-Cocaine (<=5g) and §946.41(1) Resisting or Obstructing an Officer.

2

>Milwaukee County Case Number 2005CF002833: Jackson was charged with §961.41(1)(cm)1g Manufacture/Deliver Cocaine (<=1g) and §961.41(1m)(cm)2 Possess w/Intent-Cocaine (>5-15g) and §941.29(2)(a) Felon Possess Firearm. The criminal complaint in that case alleges that Jackson sold crack cocaine to an undercover officer. Jackson was then stopped and police searched his automobile and recovered a loaded .22 caliber semiautomatic handgun with one unspent cartridge in the chamber and six additional rounds inside the magazine in a black nylon netting behind the glove box of the automobile. Charges in this case were dismissed upon motion of the State.
>
>Milwaukee County Case Number 2010CF005037: Jackson was convicted on 2/15/2011 of §943.201(2)(a) Misappropriate ID Info – Obtain Money.
>
>Additionally, there is reliable information from Law Enforcement that JACKSON is affiliated with the known street gang HPT/ATK. Member of HPT/ATK are known amongst Law Enforcement to be armed with firearms, involved in the sale of illegal narcotics and have committed other shootings. Your affiant knows that firearms can be easily relocated from structure to structure and that executing this warrant in a no knock manner would provide Law Enforcement the advantage of speed and surprise so that JACKSON or other occupants of the residence may not have time to arm themselves.

*Id.* at 7–8.

On November 4, 2015, Waukesha County Circuit Court Judge Lee S. Dreyfus authorized the no-knock warrant. *Id.* at 3. Officers from the Brookfield and Milwaukee police departments executed the warrant the next morning. ECF No. 10, ¶ 18; ECF No. 46-5 at 6. Jackson fled his residence. ECF No. 10, ¶ 20; ECF No. 46-5 at 6. Officers found a loaded handgun under what they believed to be Jackson's mattress. ECF No. 46-5 at 6. They eventually apprehended Jackson, who "had injuries consistent with diving through a glass window." ECF No. 43-2 at 4–5, ¶ 11; ECF No. 10, ¶ 20.

### B. Conviction, Postconviction Motions, and Appeal

The State of Wisconsin charged Jackson with two counts of attempted first degree intentional homicide, one count of first degree recklessly endangering safety, and one count of possession of a firearm by a felon. ECF No. 46-5 at 2–3. A jury found Jackson

3

Case 2:20-cv-01148-LA   Filed 03/18/22   Page 3 of 13   Document 51

guilty on all counts on July 22, 2016. *State v. Jackson*, Case No. 2016CF000018 (Waukesha County Circuit Court).

The United States later charged Jackson with unlawful possession of a firearm. ECF No. 43-2. Bilson provided the affidavit in support of the criminal complaint. *Id.* at 2–6. He averred that he was a Special Agent with the FBI assigned to "the FBI Southeastern Wisconsin Regional Gang Task Force (SWRGTF) operating out of Milwaukee Police Department District 5 Headquarters." *Id.* at 2. He recounted much of the information Levenhagen provided in the warrant affidavit. *See id.* at 2–6. He cited Jackson's prior convictions but did not mention any purported gang affiliation. *Id.* at 5–6. The federal government later dismissed the indictment without prejudice. *United States v. Jackson*, Case No. 15-CR-227 (E.D. Wis.), ECF No. 26.

Jackson filed a state postconviction motion claiming ineffective assistance of counsel. ECF No. 43-3. He alleged that Levenhagen's warrant affidavit contained false information because he was not a member of the HPT/ATK gang. *Id.* ¶ 5. He alleged that Vartanian knowingly provided the false gang affiliation information to Tank, who then provided it to Levenhagen. *Id.* ¶¶ 6–8. He further alleged that the gang affiliation information was material to the no-knock authorization and that absent the information there was not sufficient evidence to support the no-knock authorization. *Id.* ¶¶ 3, 10. Jackson allegedly notified his attorneys of these circumstances, and yet the attorneys did not file a motion to suppress the evidence found in executing the no-knock warrant. *Id.* ¶ 12. He claimed his attorneys' refusal to file the motion was deficient and prejudicial. *Id.* ¶¶ 14–15.

Judge Dreyfus denied Jackson's postconviction motion. ECF No. 43-4. He concluded that, excluding the gang affiliation information from the warrant affidavit, "there is more than sufficient information to that request [that] justifies and support[s] a no knock provision based upon safety concerns, understanding that the investigation relates to attempted homicide, discharge of firearms, and essentially, safety concerns in terms of execution of a search warrant relative to it." *Id.* at 17:23–18:4.

Jackson appealed, and the Wisconsin Court of Appeals affirmed. *State v. Jackson*, 939 N.W.2d 881, 2020 WL 21212 (Wis. Ct. App. 2020) (unpublished decision). The court concluded:

> [T]he record demonstrates that a motion to suppress would not have succeeded. Setting aside the disputed gang affiliation, police still had "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous." As detailed in the affidavit, Jackson was a convicted felon who police believed had tried to kill multiple people with a firearm. Because there was a sufficient independent basis to authorize the no-knock provision, Jackson's trial counsel was not ineffective for failing to file a motion to suppress.

*Id.* at *3 (citations omitted).

### C. The Amended Complaint

Jackson's allegations track the information in the state court documents and postconviction materials. Jackson further alleges that Vartanian participated in a 2014 investigation of the HPT/ATK gang, during which officers identified two gang members known as "C." ECF No. 10, ¶¶ 5–7. At one debriefing Vartanian attended, Chaz Biami, a black male born in 1979, was identified as "C." *Id.*, ¶ 8. At a debriefing Bilson attended as an FBI task force member, a source identified another "C" as a man in his forties who drove pickup trucks and an "Old School" sedan. *Id.*, ¶ 9.

On October 29, 2015, Brookfield Detective Tank asked the Milwaukee Violent Crimes Group about the "C" from the Brookfield shooting. *Id.*, ¶ 10. Tank identified "C" as a black male in his twenties with light skin, 5'6" in height, living near 40th Street and North Avenue, and driving a burgundy Infiniti. *Id.* Vartanian responded with information about a "C" identified by one of his sources. *Id.*, ¶ 11. Vartanian told Tank that he believed Jackson was "C" and that reliable informants identified Jackson as "C." *Id.*, ¶ 12. He told Tank that "C" sold illegal narcotics and was affiliated with the HPT/ATK gang. *Id.* Jackson alleges that Vartanian knew or should have known that he was not the "C" involved with the gang, that the informants wrongly identified him as "C," and that the information Vartanian provided Tank did not match the description of "C" or the geographical area where the street gang was known to operate. *Id.*, ¶¶ 13–14. Tank relayed the above information—including the allegedly false gang affiliation information—to Levenhagen, who prepared the warrant affidavit. *Id.*, ¶¶ 16–17.

Jackson alleges that Bilson and Vartanian were partners on an FBI task force. *Id.*, ¶ 32. Bilson allegedly knew or should have known that Jackson was not the "C" affiliated with the HPT/ATK gang. *Id.* Bilson attended a briefing on the warrant before it was executed but did not act to prevent its execution, despite knowing Jackson was not the "C" identified in the affidavit. *Id.* Both Bilson and Vartanian assisted with the execution of the no-knock warrant, where Jackson jumped through a glass window, fearing "that the house was being burglarized or under attack." *Id.*, ¶¶ 2–3, 20, 25.

## II. DISCUSSION

Jackson claims that Vartanian and Bilson violated and conspired to violate his Fourth Amendment rights by knowingly providing false information that was material to

the warrant's no-knock authorization. Bilson contends that Jackson's claims are barred by the state courts' decisions under the doctrine of collateral estoppel. Even if Jackson can proceed on his claims, Bilson contends he is entitled to qualified immunity. ECF No. 43 at 6. Vartanian contends that the pleadings do not establish a plausible Fourth Amendment claim because the search warrant was valid. ECF No. 45 at 4–6. Even if Jackson adequately pleaded a Fourth Amendment violation, Vartanian contends he is entitled to qualified immunity. *Id.* at 6–7.

### A. Legal Standard

I may grant a Rule 12(c) only if "it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). Rule 12(c) motions are subject to the same standards that govern a Rule 12(b)(6) motion to dismiss. *See Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

As with a Rule 12(b)(6) motion, I may not look beyond the pleadings in ruling on a Rule 12(c) motion. *See* Fed. R. Civ. P. 12(d); *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). The pleadings include "the complaint itself, documents attached to

7

the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The motions include several documents, including the search warrant and supporting affidavit, the federal criminal complaint and its supporting affidavit, Jackson's postconviction motion and reply brief, a transcript of the trial court's oral ruling and written order on that motion, and the state criminal complaint in Jackson's underlying criminal matter. I may take judicial notice of the filings and opinions in the underlying state court case because they are matters of public record, and I have no reason to question their authenticity. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). I may also consider the federal criminal complaint and affidavit. They are not sealed and are available on the court's electronic docket, *see United States v. Jackson*, Case No. 15-CR-227 (E.D. Wis.), ECF No. 1, and the amended complaint refers to the federal criminal complaint. *See Hecker*, 556 F.3d at 582. I conclude that I may consider the attached documents without converting the motions for judgment on the pleadings into motions for summary judgment.

**B. Waiver**

Jackson contends that Bilson waived his ability to raise defenses of collateral estoppel and qualified immunity in his current motion. Citing Rule 12(g), he insists that because Bilson did not include the defenses in his earlier Rule 12(b)(6) motion to dismiss, he may not assert them in his current Rule 12(c) motion for judgment on the pleadings. ECF No. 48 at 3–6. However, collateral estoppel and qualified immunity are grounds to dismiss a complaint for failure to state a claim, *see Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (qualified immunity); *Lechnir v. Wells*, 157 F. Supp. 3d 804, 807–08 (E.D.

Wis. 2016) (collateral estoppel discussed as claim preclusion), and failure-to-state-a-claim defenses are excepted from the Rule 12(g)(2) consolidation requirement and not included in the Rule 12(h)(1) waiver rule. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Therefore, Bilson did not waive his ability to raise collateral estoppel or qualified immunity in this Rule 12(c) motion by not raising them in his prior Rule 12(b)(6) motion.

### C. Collateral Estoppel

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine applies in federal cases where an issue was previously decided by a state court, including § 1983 actions following a state court criminal action. *Id.* at 95, 103–05. In such cases, the federal court must give the earlier state court decision the same preclusive effect it would be given in courts in the same state. *Id.* at 96. Wisconsin law bars a party from relitigating an issue that was "'litigated, determined, and necessary to the decision in the prior proceeding.'" *Donald v. Polk County*, 836 F.2d 376, 382 (7th Cir. 1988) (quoting *Reckner v. Reckner*, 314 N.W.2d 159, 165 (Wis. Ct. App. 1981)). Wisconsin law does not require mutuality of parties when collateral estoppel is raised "defensively to prevent a party from relitigating an issue which has been conclusively resolved against that party in a prior case." *Id.* (quoting *Crowall v. Heritage Mut. Ins. Co.*, 346 N.W.2d 327, 330 (Wis. Ct. App. 1984)). So long as the party being precluded had a full and fair opportunity to litigate the claim, Wisconsin law gives "preclusive effect to state court determinations on issues that were: (1) identical; (2) actually litigated; and (3) necessary to the state court's final judgment." *Id.*

9

The state courts determined that the gang affiliation information was not material to the warrant's no-knock authorization. These findings were necessary to the state courts' rulings that Jackson's attorneys did not perform deficiently. Judge Dreyfus concluded that, excluding the gang affiliation information, "there is more than sufficient information to that request [that] justifies and support[s] a no knock provision." ECF No. 43-4 at 17:23–18:4. The Wisconsin Court of Appeals agreed, concluding that "[s]etting aside the disputed gang affiliation, police still had 'a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous.' . . . [T]here was a sufficient independent basis to authorize the no-knock provision." *Jackson*, 2020 WL 21212, *3. Therefore, Jackson is estopped from asserting that the gang affiliation information was material to the warrant's no-knock authorization.

### D. Qualified Immunity

With that fact established, the defendants are clearly entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)). To defeat the defendants' assertion of qualified immunity, Jackson must show that 1) the defendants violated his constitutional right and 2) the right at issue was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232. If he fails to satisfy either inquiry, then the defendants are entitled to qualified immunity. *See Muhammad v. Pearson*, 900 F.3d 898, 904 (7th Cir. 2018).

10

Case 2:20-cv-01148-LA   Filed 03/18/22   Page 10 of 13   Document 51

An officer violates the Fourth Amendment if they "knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting [a] warrant and the false statements were necessary to the determination that a warrant should issue." *Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011) (quoting *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003)). Importantly, "[i]mmaterial misstatements will not invalidate an otherwise legitimate warrant." *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003) (quoting *Forman v. Richmond Police Dep't*, 104 F.3d 950, 964 (7th Cir. 1997)). Therefore, "if an officer knowingly or recklessly includes false information in an affidavit and that information is not material, he will not be liable in a § 1983 action because the plaintiff will not be able to prove a constitutional violation." *Rainsberger v. Benner*, 913 F.3d 640, 653 (7th Cir. 2019).

Jackson fails on the first prong of the qualified immunity analysis. Even if I assume that the gang affiliation information was false, Jackson cannot show that the defendants violated his Fourth Amendment rights because the information was not material to the warrant's no-knock authorization. The state courts concluded as much, and I am bound by those conclusions under the doctrine of collateral estoppel. Jackson cites no cases suggesting that an officer who supplies a single, immaterial false allegation in support of a no-knock warrant commits a Fourth Amendment violation. He would be hard-pressed to do so given this circuit's case law. *See, e.g.*, *Rainsberger*, 913 F.3d at 653; *Lawson*, 637 F.3d at 705. Because there was no Fourth Amendment violation, I conclude that the defendants are entitled to qualified immunity and need not address the second inquiry of

whether the right at issue was clearly established.[1] Moreover, because there was no underlying constitutional violation, Jackson's conspiracy claim also fails. *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

### III. CONCLUSION

Jackson claims that the defendants violated and conspired to violate his Fourth Amendment rights by knowingly providing false information that was material to a warrant's no-knock authorization. However, the state courts conclusively determined that the allegedly false information was immaterial to the no-knock authorization. Jackson is estopped from asserting otherwise and therefore cannot show a violation of his Fourth Amendment rights. Without an underlying constitutional violation, he cannot succeed on his conspiracy claim either.

**IT IS THEREFORE ORDERED** that the defendants' motions for judgment on the pleadings (ECF Nos. 42 and 44) are **GRANTED**. This case is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows

---

[1] The Seventh Circuit recently concluded that a detective who submitted a probable cause affidavit with known lies and omissions was not entitled to qualified immunity. *See Rainsberger*, 913 F.3d at 652–53. But there, the false information was material to the probable cause determination and warrant issuance. *Id.* at 651. Here, the allegedly false information was immaterial to the no-knock authorization. Had the false information been material, however, and if the defendants indeed knew it to be false, then they likely would not be entitled to immunity. *See id.* at 653.

good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 18th day of March, 2022.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge